# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

CARMEN RODRIGUEZ,

               **Plaintiff,**

-vs-                                    **Case No. 6:08-cv-1004-Orl-DAB**

COMMISSIONER OF SOCIAL
SECURITY,

               **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's

administrative decision to deny Plaintiff's application for social security disability benefits. For the

reasons set forth herein, the decision of the Commissioner is **AFFIRMED.**

### PROCEDURAL HISTORY

Plaintiff protectively filed an application for a period of disability and disability insurance

benefits on December 28, 2004 (R. 92-97). The application was denied initially, and upon

reconsideration (R. 64-67; 71-74). Plaintiff requested and received an administrative hearing before

an Administrative Law Judge ("the ALJ") (R. 276-86) and the initial hearing was adjourned, pending

further consultative examination. A subsequent hearing was held on November 7, 2007 (R. 285-95).

The ALJ issued an unfavorable decision on December 17, 2007 (R. 8-20). On April 18, 2008, the

Appeals Council denied Plaintiff's request for review (R. 4-7), making the ALJ's decision the final

decision of the Commissioner.

Plaintiff brings the instant action for review and has consented to the jurisdiction of the United

States Magistrate Judge. The matter has been fully briefed and is now ripe for resolution.

### NATURE OF CLAIMED DISABILITY

Plaintiff alleges disability beginning on August 1, 2002 (the amended onset date), due to multiple sclerosis ("MS") and a hearing loss (R. 39, 99).

*Summary of Evidence Before the ALJ*

Plaintiff was 51 years old at the time of the ALJ's decision, with a twelfth grade education and past relevant work experience as an account representative for a carrier service and a monitor for an elementary school (R. 99, 103, 105, 121, 140). According to her earnings record, Plaintiff's disability insured status expired on June 30, 2006 (R. 13, 82).

The medical record for the applicable time period is set forth in detail in the decision and, in the interests of privacy and brevity, will not be repeated here except as necessary to address Plaintiff's specific objections. By way of summary, the ALJ determined that Plaintiff had the severe impairments of multiple sclerosis, relapsing-remitting type, and bilateral hearing loss, moderate to severe in left ear and mild to moderate in right ear (R. 14), and the record supports this uncontested finding. In addition to the medical records of Plaintiff's treating providers, the record also includes an audiological consultative evaluation, and other opinions from examining and non-examining state agency practitioners. Non-medical evidence includes Plaintiff's brief testimony at the hearing, and the testimony of a Vocational Expert.

After detailing the medical and testimonial evidence of record, the ALJ found that Plaintiff had the impairments of multiple sclerosis, relapsing-remitting type, and bilateral hearing loss, moderate to severe in left ear and mild to moderate in right ear (R. 14), all of which were severe impairments, but not severe enough either singly or in combination to meet an impairment in the Listings. The ALJ found that Plaintiff had the residual functional capacity ("RFC") to lift and carry ten pounds frequently and twenty pounds occasionally; stand, walk, and sit six hours in an eight-hour workday with an alternating sit/stand option; and also found Plaintiff could never climb ropes, ladders

or scaffolds and should avoid concentrated exposure to unusual work place hazards (R. 15). The ALJ

determined Plaintiff could work at jobs requiring hearing the normal spoken voice and avoid jobs

requiring exquisite hearing or attention to low tones, signals and prompts. *Id.* The ALJ found that

Plaintiff's past relevant work as a shipping services sales representative did not require the

performance of work-related activities precluded by her RFC, and that Plaintiff was capable of

returning to this work (R. 19-20). As such, the ALJ determined that Plaintiff was not under a

disability.

## STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct

legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings

are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The

Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C.

§ 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely

create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable

person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560

(11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will

affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the

reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v.*

*Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir.

1991). The district court must view the evidence as a whole, taking into account evidence favorable

as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d

835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**The Five Step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Here, the ALJ determined this matter at the fourth step – finding that Plaintiff could return to her past relevant work. Thus, at all times relevant, it was Plaintiff's burden to establish the existence of a disability and that, on or before her date last insured, she was unable to perform her past relevant work. *See Barnes v. Sullivan*, 932 F.2d 1356, 1359 (11th Cir. 1991).

Plaintiff raises three objections to the Commissioner's decision, contending that: 1) the ALJ erred in determining that the claimant has the residual functional capacity to perform a reduced range

of light work when the claimant's treating physician indicated that the claimant would be unable to perform even sedentary work; 2) the ALJ erred in posing a hypothetical question to the Vocational Expert that did not adequately reflect the limitations of the Plaintiff; and 3) the ALJ erred in his credibility determination.

### Treating Physicians

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or

-5-

contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

Here, Plaintiff objects that the ALJ did not give controlling weight to the June 2007 opinion of Plaintiff's treating neurologist, as set forth in a Multiple Sclerosis Residual Functional Capacity questionnaire (R. 241-252). In that document, Dr. Benezette opined that Plaintiff experienced significant and persistent disorganization of motor function in two extremities, specifically the left more than the right upper and lower extremities, resulting in sustained disturbance in gait and station. (R. 245). Additionally, Dr. Benezette indicated that Plaintiff experienced weakness and fatigue, demonstrated on physical examination, requiring an assistive device for ambulation of over twenty feet. *Id.* Dr. Benezette opined that Plaintiff could sit, stand/walk for less than two hours each in an eight-hour work day (R. 248), could walk "zero" city blocks without rest (R. 247), and that Plaintiff was incapable of even low stress jobs. In the decision, the ALJ determined that this opinion was not entitled to controlling, substantial or considerable weight in that: 1) the opinions were wholly conclusory and were not supported by any cited clinical findings; 2) the opinion is inconsistent with his own treatment records; and 3) the findings were offered after Plaintiff failed to return to another neurologist, whose opinion differed. The Court finds that these reasons are supported by substantial evidence and constitute sufficient legal grounds to discount Dr. Benezette's opinion.

Plaintiff was first seen by Dr. Benezette on July 26, 2005, for evaluation of her multiple sclerosis (R. 229-31). She listed as the primary reason for her visit that she was "seeking new doctor." (R. 232). Plaintiff reported that her last exacerbation of her MS occurred "three years ago when she developed some transient right-sided motor and sensory symptoms." (R. 229). On examination, Plaintiff had 5/5 strength in the upper and lower extremities with a "mild" decrease in tone in the left

greater than the right upper and lower extremities (R. 231). A sensory examination showed decreased vibratory sense in the right upper extremity and heel to shin testing showed mild ataxia. Plaintiff's reflexes were 3/4 in the left greater than right upper and lower extremities and plantar response was flexed in both feet. Her gait and station were unsteady and she was found to have somewhat dysarthric speech due to impaired hearing. *Id.* Dr. Benezette gave an impression of multiple sclerosis, relapsing remitting type, and suspected mild cognitive impairment secondary to the multiple sclerosis. It was noted that Plaintiff was not interested in any further neurodiagnostic studies or medications for fear of side effects. Plan was to remain on Copaxone, maintain adequate hydration, nutrition and good sleep hygiene, and to use an assistive device when ambulating. Plaintiff was to return for follow-up, in six months. *Id.*

On September 9, 2005, Dr. Benezette completed a form and was asked to describe the extent of any associated sensory, motor, or reflex deficits in the extremities (R. 228). Dr. Benezette responded that Plaintiff had a mild increase in muscle tone (spasticity), which was greater in her left upper and lower extremities and decreased vibratory sense in the right upper extremity (R. 228). Plaintiff had an unsteady gait that placed her at risk for falling but she did not have any loss of motion or deformity of a major joint. Her grip strength was 5/5 and her fine dexterity was normal. *Id.*

On November 16, 2005, Plaintiff returned to her neurologist, complaining of a swollen ankle, which was found to be severely sprained/strained (R. 226-27). Her neurological examination was the same (R. 226-227), and it was again noted that Plaintiff was not interested in medication or further neurodiagnostic studies "including neuropsychological evaluation for her cognitive complaints." (R. 227).

On February 20, 2006 follow-up visit, her ankle symptoms had improved (R. 221). Neurological examination was relatively unchanged, with similar findings (R. 221-22). Plan was to follow up in six months for re-evaluation.

On her fourth visit, August 22, 2006, after the date last insured, examination showed "essentially full range of motion" of the extremities; strength continued to be 5/5 in the upper and lower extremities, with a mild increase in tone in the left (R. 220). Plaintiff reported that she was not interested in an MRI of the brain to assess her current level of brain demyelinization, but she did agree to begin a course of physical therapy (R. 220).

Similar findings were reported on subsequent examinations after the date last insured (R. 234, 243). On October 13, 2006, Dr. Benezette cautioned Plaintiff about walking on wet surfaces and stated that she should refrain from prolonged sitting (R. 235). On April 11, 2007, Dr. Benezette stated that Plaintiff was to continue to do light stretching, range of motion, and walking on a daily basis as tolerated (R. 243). Dr. Benezette again noted that Plaintiff was unsteady and at risk for falling, but reported that she was not interested in an assistive device. Plaintiff was cautioned about walking on level, firm, and well-lit surfaces (R. 243).

The severe restrictions present in the 2007 opinion do not appear in the treatment notes, which routinely noted full strength and mild impairment. No hospitalizations or incidents of severe exacerbation are noted in the course of her treatment and, although Dr. Benezette found Plaintiff to be unsteady, Plaintiff continually rejected the need for an assistive device, and refused additional medications or diagnostic studies. Moreover, the restriction against walking even one city block is expressly contradicted by the treatment notes, which encourage walking on a daily basis. As summarized by the ALJ, "[d]espite her subjective complaints, the treatment notes of record continually reflect that the claimant has virtually a full range of motion in her extremities, 5/5 strength

-8-

throughout and only "mild" spasticity and ataxia (R. 17).[1] The ALJ's determination that the opinion was conclusory and unsupported by treatment notes is adequately supported.

As for the ALJ's finding that Dr. Benezette's opinion was not the first opinion sought, this, too, finds support in the record. On June 29, 2004, prior to presenting to Dr. Benezette, Plaintiff presented to neurologist Dr. Jeffrey J. Ahmed (R. 157-60). Plaintiff reported that she had not had a major flare-up of her multiple sclerosis in two years (R. 157). Examination revealed that Plaintiff had some giveaway weakness at the hips on hip flexion during motor examination, but she had full power throughout, including in her legs (R. 158). Plaintiff could get up out of a chair and sit down serially with only slight difficulty; and sensory examination was intact throughout all modalities tested and reflexes were one to two plus (R. 158-59). Plaintiff had some very mild, slight ataxia in both arms, rapid alternating hand movement was fair. On tandem gait, Plaintiff had some difficulty compatible with ataxia and she seemed to have trouble coordinating her movements when walking (R 159). Dr. Ahmed ordered a urinalysis, noting that persons with MS can have worsening of symptoms if they have a urinary tract infection. *Id.* It was subsequently noted that Plaintiff did not undergo the uranalysis, and did not attend her follow up appointment (R. 159-60). As is evident, Dr. Ahmed's notes do not support the severe limitations found in Dr. Benezette's opinion.[2]

_____

[1]The examination findings are consistent, overall, with the findings of consultative examiners. On May 19, 2005, a consultative examination by Dr. James R. Shoemaker showed Plaintiff had full range of motion in the upper and lower extremities; grip strengths were 4/5 bilaterally; fine manipulation was within normal limits, and motor examination in the lower extremities was 4/5 (R. 166). A September 24, 2007 consultative examination by Dr. David W. Carpenter revealed full range of motion of all upper extremity joints, including the wrists, elbows, and shoulders, and full range of motion in the lower extremities; cranial nerves II through XII were determined to be grossly intact; and Plaintiff retained the ability to hear and understand simple oral instructions and to communicate simple information (R. 255- 263). Dr. Carpenter opined that Plaintiff could lift and carry up to 20 pounds occasionally and up to 10 pounds frequently, sit six hours in an eight hour day, stand three hours, and walk two hours (R. 259).

[2]While the Court agrees with Plaintiff that the record does not support any implication that she selected Dr. Benezette and did not return to Dr. Ahmed because she was "doctor shopping" for purposes of getting a favorable disability opinion, such is of no moment here, as the ALJ has articulated adequate legally sufficient reasons for discounting Dr. Benezette's opinion, and those reasons are adequately supported.

(continued...)

As the ALJ provided adequate reasons for discounting the opinion of Dr. Benezette, and those reasons are amply supported in the record, the Court finds no error.

**Hypothetical Questions**

At hearing, the ALJ asked the Vocational Expert ("VE") to assume that Plaintiff was limited to the RFC as determined by the ALJ, and the VE testified that such a claimant could perform her past relevant work (R. 292-93). When the VE was presented with a hypothetical utilizing the limitations as outlined by Dr. Benezette, the VE indicated that such a claimant could not perform any work (R. 293-94). Plaintiff contends that the ALJ erred in posing and relying on the hypothetical to the VE that did not include the restrictions found by Dr. Benezette.

Case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id.* at 1561 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)). An ALJ, however, is "not required to include findings in the hypothetical that the ALJ [has] properly rejected as unsupported." *Crawford v. Commissioner of Social Security,* 363 F. 3d 1155, 1158 (11th Cir. 2004).

Here, as set forth above, the ALJ rejected the restrictive opinions of Dr. Benezette, and that decision is supported by substantial evidence. As such, the Court finds that the hypothetical was not deficient due to an absence of those limitations. As the RFC determination was adequately supported by substantial evidence, the hypothetical posed to the VE was appropriate.

---

[2](...continued)

**Credibility**

Plaintiff's final contention is that the ALJ erred in determining that Plaintiff was "not entirely credible" when "the record clearly reveals that the Plaintiff suffered from documented impairments causing significant limitations." Brief at 18.

Where an ALJ decides not to credit a claimant's testimony about pain or limitations, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Here, the ALJ did not find Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms to be entirely credible, noting, in detail, that the medical evidence did not support her allegations (R. 17). The ALJ also detailed the absence of any hospitalizations, Plaintiff's statements that she has not had a major flare up of her MS since 2002, the conservative and limited treatment Plaintiff has undergone, and her refusal to undergo additional testing, medications or use of an assistive device. *Id.* All of these findings have ample support in the record. Although Plaintiff points out in her brief that no treating physician indicated that she was exaggerating her symptoms and that "it is apparent that [Plaintiff] suffered from chronic limitations resulting from her Multiple Sclerosis," the issue is not whether there is other evidence that supports Plaintiff, but whether there is substantial evidence that supports the ALJ's determination. Here, that test is met.

-11-

A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.[3]

A final note is in order. The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511. While it is clear that Plaintiff has challenges and difficulties, the only issue before the Court is whether the decision by the Commissioner that Plaintiff did not meet this standard is adequately supported by the evidence and was made in accordance with proper legal standards. As the Court finds that to be the case, it must affirm the decision.

### CONCLUSION

The decision of the Commissioner was supported by substantial evidence and was made in accordance with proper legal standards. As such, it is **AFFIRMED.** The Clerk is directed to enter judgment accordingly and close the file.

**DONE** and **ORDERED** in Orlando, Florida on January , 2010.

*David A. Baker*
_____
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

---

[3]The Court is also unpersuaded by Plaintiff's contention that the ALJ should have inquired into the reasons Plaintiff refused additional testing, stating that "[p]erhaps, she cannot afford the treatment." Brief at 19. The Court finds no suggestion in the record that Plaintiff refused treatment due to poverty. Indeed, Plaintiff told her doctor that she refused medication for fear of side effects (R. 231). Moreover, Plaintiff also refused relatively benign and inexpensive recommendations, such as a urinalysis and use of an assistive device.

Copies furnished to:

Counsel of Record